# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MICHAEL JULIUS,**

     **Applicant,**

v.                                **Case No. 8:19-cv-2741-TPB-CPT**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____

## ORDER

Michael Julius, a Florida prisoner, timely filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the application, Respondent's response in opposition (Doc. 11), and Julius's reply (Doc. 23), the Court denies the application.

## Procedural History

A state court jury convicted Julius of burglary. (Doc. 11-2, Ex. 4.) The state trial court sentenced him to 25 years in prison. (Doc. 11-2, Ex. 6.) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 11-3, Ex. 11.) Julius's first motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850, was stricken. (Doc. 11-3, Exs. 13, 14.) His amended postconviction motion was denied. (Doc. 11-3, Exs. 15, 16, 20.) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 11-3, Ex.

1

28.) The state appellate court also denied Julius's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141(d). (Doc. 11-3, Exs. 33, 34.)

### Facts[1]

Glen Hobbs owned a sports bar called Hobbs' Hideaway in Pasco County, Florida. On the morning of February 25, 2013, Hobbs followed his routine of arriving at the bar at around 8:00 a.m. When he entered, the ring tone reminder to deactivate the alarm did not sound, and he noticed light coming in through the back door. Hobbs went outside and called police. When he went back in to survey the bar, he saw that the back door had been pried open. The wires to the alarm and security system were cut. A safe behind the bar was damaged, and someone had tried to pry the safe off the ground. The money that had been in the safe was gone. An ATM in the bar was damaged, and money from the ATM was missing.

A soda cooler was behind the bar. It had room to hold 10 Mountain Dew cans, but only contained eight cans that morning. Hobbs noticed two Mountain Dew cans on the back counter underneath the beer taps. One of the cans was open. Inside the bar, police also found cigarette butts on the floor, a napkin around the open soda can, an envelope with a fingerprint, and a bank bag, and

---

[1] The factual summary is based on the trial transcript and appellate briefs.

noticed a "cloth pattern" on the safe. (Doc. 11-2, Ex. 3, pp. 290-91.) A shoe print was outside the back door.

Stephanie Short was the bartender who closed the bar on the night of February 24, 2013. Short cleaned the bar area and counters that night. Her boyfriend, Dan Robbins, helped her clean up by sweeping and mopping. When Short left around midnight, no soda cans were out on the counter and the soda cooler was fully stocked.

Julius's DNA was on the mouth of the open Mountain Dew can. Business at the bar was slow the night before the burglary and Short recognized everyone there. But she did not know Julius, and to her knowledge, she had never served him. She had not sold any cans of Mountain Dew that night.

## Standards Of Review

### The AEDPA

The Antiterrorism and Effective Death Penalty Act governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

4

understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).

**Ineffective Assistance Of Counsel**

Julius alleges ineffective assistance of trial counsel and appellate counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Julius must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Julius must

show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Julius must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state

court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### Exhaustion Of State Remedies; Procedural Default

A federal habeas applicant must exhaust his claims by raising them in state court before presenting them in his application. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the applicant fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

An applicant shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). An applicant demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

**Ground One**

Julius argues that the State presented insufficient evidence to sustain his conviction, violating his federal right to due process. He contends that "the mere fact that [a] soda can with [his] DNA was collected from inside [the] establishment should not in and of itself stand for" the burglary conviction. (Doc. 1, p. 6.)

Respondent contends that the claim is procedurally barred because Julius failed to fairly present the federal nature of the claim on direct appeal. The Court disagrees. Julius's appellate brief alleged a violation of his federal rights and argued the federal sufficiency of the evidence standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). (Doc. 11-3, Ex. 9, pp. 10-14.)

8

But Julius is not entitled to relief because he does not show that the state appellate court unreasonably rejected his claim. To establish burglary, the State had to prove beyond a reasonable doubt that Julius entered a structure with the intent to commit an offense therein, when the premises were not open to the public or he was not invited or licensed to enter. *See* § 810.02(1)(b)1., Fla. Stat. The sufficiency of the evidence standard articulated in *Jackson* asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319.

The State presented evidence that the open soda can with Julius's DNA was not on the counter when bartender Stephanie Short closed the bar on the night of February 24, 2013, but was there the next morning. The jury could conclude that this evidence indicates Julius was inside the bar overnight, when the bar was not open to the public and when Julius was not invited or licensed to be present. Furthermore, the same morning the soda can was found on the counter, the back door had been pried open, the safe and ATM had been damaged, money was missing, and the wires to the surveillance and alarm systems had been cut. The jury could infer from this evidence that Julius was inside the bar with the intent to commit an offense.

Julius fails to demonstrate that when considering this evidence in the light most favorable to the prosecution, no rational trier of fact could have

9

found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. He does not show that the state appellate court's denial of his claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Julius is not entitled to relief on Ground One.

**Ground Two**

Julius argues that the trial court violated his federal right to present a defense when it did not allow him to introduce evidence about a burglary at a nearby Domino's Pizza that occurred the same night the bar was burglarized. Julius alleges that a surveillance video shows two other people were responsible for the Domino's burglary. He suggests that the perpetrators of the Domino's burglary also burglarized the bar.

Respondent argues that Julius's claim is procedurally barred because he did not raise its federal dimension in state court. Respondent's argument is unavailing. Julius's appellate brief discussed federal case law and maintained that he was entitled to present evidence about the Domino's burglary under the United States Constitution. (Doc. 11-3, Ex. 9, pp. 14-17.)

The state court did not unreasonably deny Julius's claim. A criminal defendant has the constitutional right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). But this right has limitations. *See Chambers v. Mississippi*, 410 U.S. 284, 302

(1973) (stating in the context of the right to present defense witnesses that "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence"); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (stating that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (noting that the Supreme Court has never "questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted" (citing *Chambers*, 410 U.S. at 302)).

Julius has not shown that the state appellate court's ruling was unreasonable. Julius's counsel addressed this matter with the trial court. Although counsel did not believe the Domino's evidence to be relevant, counsel stated that Julius "want[ed] to get into" the evidence. (Doc. 11-2, Ex. 3, pp. 138-39.) Specifically, counsel indicated, Julius was interested in "consistencies or inconsistences" between the burglaries. (*Id*.)

Counsel noted that the only "possibly relevant" matter would be that there was a second suspect in the Domino's burglary, but that a surveillance video from Domino's was unavailable because it "can't be played apparently."

11

(*Id.*, p. 139.) Counsel stated that Julius believed it was important to elicit testimony about a second suspect. (*Id.*) Julius spoke directly to the trial court and stated that "if a video is shown that's more proof that it was not me if I don't look like one of the two suspects." (*Id.*)

The trial court determined that evidence about the Domino's burglary had "absolutely nothing to do with" the bar burglary with which Julius was charged. (*Id.*) The trial court concluded that Julius was essentially asking to introduce reverse *Williams* rule evidence. (*Id.*, pp. 139-40); *see Newby v. State*, 272 So.3d 862, 867 (Fla. 2d DCA 2019) (explaining that reverse *Williams* rule evidence is similar fact evidence offered by a defendant to show that someone else committed the crime (citing *State v. Savino*, 567 So.2d 892, 893 (Fla. 1990))). The trial court determined that it lacked sufficient information to allow the introduction of such evidence. (*Id.*, p. 140.)

Julius does not show that the trial court erred in excluding evidence about the Domino's burglary. "All relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. Relevant evidence is evidence that "tend[s] to prove or disprove a material fact." § 90.401, Fla. Stat. Julius does not show that this evidence was relevant. Julius only speculates that evidence of the Domino's burglary would have cast doubt on his guilt regarding the bar burglary; he even voiced his belief that video would help "if" the people on it did not resemble him. Further, it does not appear that the video was available.

12

As Julius has not established that the video or any other evidence about the Domino's burglary was relevant to his case and available, he does not show that the trial court violated his federal right to present a defense by excluding such evidence.

The state appellate court's denial of Julius's claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Julius does not show that the ruling was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

**Ground Three**

Julius alleges that during voir dire, the trial court and the prosecutor violated his rights to due process and a fair trial by making inaccurate statements about the State's burden of proof. The Court agrees with Respondent that this claim is procedurally defaulted. Julius's appellate brief only made an unelaborated citation to the Fifth and Fourteenth Amendments at the conclusion of his argument and, in a string citation within a footnote, cited one federal decision for the proposition that the purpose of *voir dire* is to empanel an impartial jury. (Doc. 11-3, Ex. 9, pp. 18-21.) Julius's cursory reference to his federal rights did not fairly present a federal due process claim to the state court.

In *Baldwin v. Reese*, the Supreme Court of the United States stated that an applicant can "indicate the federal law basis for his claim" by citing the

13

federal source of law in conjunction with the state law claim, citing a case deciding such a claim on federal grounds, or simply labeling the claim as "federal." 541 U.S. 27, 32 (2004). The Eleventh Circuit Court of Appeals has determined that this language was dicta and has held that more than a perfunctory reference to federal law is necessary to fairly present a federal claim:

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitions seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F.Supp.2d [1179,] 1184 [(M.D. Ala. Apr. 29, 2004)] (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)). This is consistent with settled law established by the Supreme Court. *See Picard* [*v. Connor*], 404 U.S. [270,] 275, 92 S.Ct. [509,] 512 [(1971)] ("We emphasize that the federal claim must be fairly presented to the state courts."). We therefore hold that " '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.' " *Kelley* [*v. Sec'y for Dep't of Corr.*], 377 F.3d [1317,] 1345 [(11th Cir. 2004)] (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

*Campbell v. McNair*, 416 F.3d 1291, 1302-03 (11th Cir. 2005).

Thus, in *McNair*, the applicant did not fairly present his federal claim when he only cited one federal decision in a string of cases and referred to federal constitutional amendments in the conclusion of argument. *See id.* at 1303-04. Similarly, Julius's minimal reference to federal law, without more,

14

was insufficient to alert the state court that he had presented a federal claim. *See id*; *see also Ramos v. Sec'y, Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011) (stating that an applicant failed to exhaust a federal claim when he "did not address any federal law in his argument, except for a passing reference to the Constitution").

Julius cannot return to state court to present the federal claim in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of sentence). Therefore, Julius's claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Julius does not show that an exception applies to overcome the default. *See id*. Ground Three is barred from federal habeas review.

**Ground Four**

Julius argues that appellate counsel was ineffective for not arguing that the trial court abused its discretion in granting a non-existent motion. His claim involves the trial court's ruling excluding evidence about the Domino's Pizza burglary, as discussed in Ground Two, *supra*. The trial court made this ruling after the defense raised the issue and absent a formal motion from the State.

At the outset of trial, the prosecutor told the trial court that the State did not intend to address the Domino's burglary since it was irrelevant to Julius's case. (Doc. 11-2, Ex. 3, pp. 7-8.) But the next day, defense counsel

brought up his understanding that the State was considering a motion in limine regarding evidence related to Domino's. As addressed in Ground Two, the trial court concluded that the Domino's burglary had "absolutely nothing to do with" the bar burglary. (*Id.*, pp. 138-40). The trial court stated that it was granting the motion and concluded that neither party would be permitted to address the Domino's burglary. (*Id.*, pp. 139-40.)

Julius does not show that appellate counsel was ineffective for failing to argue that the court abused its discretion by granting a non-existent motion. Initially, because there was no objection on the record, the matter was not preserved for appeal. Julius has not demonstrated that appellate counsel was ineffective for not raising an unpreserved argument. (*See, e.g.*, *Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992) ("[A]ppellate counsel rendered effective assistance because he either properly argued Atkins' claims on appeal or he was prohibited from raising on appeal issues that had not been preserved for appeal at the trial level.").

Moreover, Julius's claim lacks merit. Even though there was no formal motion, by stating that it was "granting" a motion, the trial court was responding to a discussion about challenging the evidence. Julius fails to show

16

that appellate counsel was ineffective for not attacking the state court's decision. As stated in Ground Two, the evidence was rejected as irrelevant, and Julius fails to establish that it was available and relevant. Julius has not shown that appellate counsel was ineffective for not raising this claim or a reasonable probability that he would have prevailed on appeal had appellate counsel done so.

Because Julius does not show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Ground Four.

**Ground Five**

Julius argues that appellate counsel was ineffective for not raising a conflict-of-interest claim. Julius asserts that a conflict existed between him and his trial counsel because of "diverging [sic] concerning the evidence Mr. Julius was requesting counsel to present in his defense." (Doc. 1, p. 13.)

Julius does not show that the state appellate court unreasonably denied this claim. A defendant has a Sixth Amendment right to conflict-free counsel. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981) (holding that the Sixth Amendment right to counsel includes "a correlative right to representation that is free from conflicts of interest"). To succeed on his claim, Julius must

show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

Julius has only alleged that he disagreed with counsel's opinion about what evidence to present at trial. This type of disagreement does not amount to a conflict of interest. *See, e.g.*, *United States v. White*, 174 F.3d 290, 296 (2d. Cir. 1999) (stating that a defendant's "routine disagreement with his appointed counsel over defense strategy," such as whether "to file certain motions, to pursue certain evidentiary leads, to object to the introduction of certain evidence at trial, and to call certain witnesses at trial[,]" does not give rise to a conflict of interest); *Coronado v. Stinson*, 786 F. App'x 143, 145 (10th Cir. 2019) (stating that "a disagreement over trial strategy . . . is not an actual conflict of interest that implicates the Sixth Amendment").

Therefore, the state appellate court could have reasonably concluded that appellate counsel was not ineffective for failing to raise a conflict-of-interest claim. Julius does not show that the state appellate court's denial of his argument was contrary to or involved an unreasonable application of clearly established federal law. Nor does he demonstrate that it was based on an unreasonable factual determination. Julius is not entitled to relief on Ground Five.

**Ground Six**

Julius contends that appellate counsel was ineffective for not arguing that the trial court abused its discretion when it failed to conduct a hearing under *Richardson v. State*, 246 So.2d 771 (Fla. 1971). *Richardson* holds that a trial court must inquire into circumstances of the State's alleged failure to comply with discovery rules and determine whether any noncompliance prejudiced the defendant. *Id.* at 774-75. Julius contends that a *Richardson* hearing was needed because the State disclosed additional discovery 21 days before trial.

To the extent that the resolution of this claim depends on an application of state law governing discovery, this Court must defer to the state court's ruling that appellate counsel was not ineffective for choosing not to raise this state law issue. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).

Furthermore, Julius does not establish prejudice as a result of counsel's performance. Julius's petition alleging ineffective assistance of counsel refers to a property receipt that revealed three cigarette butts were also collected

from the scene and asserts that trial counsel did not disclose what else the property receipts revealed. (Doc. 11-3, Ex. 33, pp. 10-16.) Julius argues that the presence of the cigarette butts weakened the State's theory that the bar was cleaned that night. He also contends that a timely disclosure of all reports and property receipts would have changed his trial preparation and strategy.

Julius is not entitled to relief. The cigarette butts were addressed at trial. Forensic investigator Denice Weigand testified that she collected the cigarette butts from the floor behind the bar. (Doc. 11-2, Ex. 3, pp. 298-99.) Deputy Anthony Scarpati testified that the cigarette butts were located "up under the safe." (*Id.*, p. 309-10.) He explained that police were limited in how many items could be tested for DNA, and he did not want to use testing resources on the cigarette butts because they "may or may not have even been involved." (*Id.*) Moreover, evidence about the cigarette butts does not impact Short's testimony that she did not see the Mountain Dew can when she closed the bar the night before.

In addition, while Julius contends that the failure to disclose all property receipts sooner affected his ability to present a defense, he does not specify how his defense would have differed. Julius does not establish either deficient performance by appellate counsel for not raising the *Richardson* claim, or resulting prejudice. Because Julius does not show that the state appellate court's denial of his claim was contrary to or involved an unreasonable

20

application of clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Ground Six.

**Ground Seven**

Julius argues that trial counsel was ineffective for not moving for a reverse *Williams* rule hearing. This claim concerns the introduction of evidence about the Domino's burglary. A ruling in Julius's favor would have allowed evidence of the Domino's burglary to show that someone else likely committed the bar burglary. The state court summarily denied Julius's claim:

> The Court . . . finds Defendant's claim conclusively refuted by the record. First, the record reflects that the Domino's surveillance video was either lost or unrecoverable. Therefore, even if trial counsel had moved for a reverse *Williams* Rule hearing, it would have been impossible for the video to be admitted into evidence. Thus, trial counsel was not deficient for failing to move to admit the video. Had trial counsel moved to admit any other evidence of the Domino's burglary, the motion would likely have been unsuccessful as pointed out by the trial court.
>
> To be admissible under the reverse *Williams* Rule, the proffered evidence must have a close similarity of facts, a unique fingerprint, for the evidence to be relevant. *Huggins v. State*, 889 So.2d 743, 761-62 (Fla. 2004) (internal citations and quotations omitted). Defendant's own motion alleges factual differences between the Domino's burglary and the Hobbs' Hideaway burglary that would have resulted in the denial of a reverse *Williams* Rule motion. There was no video of the Hobbs' Hideaway burglary because the perpetrator cut the wires for the surveillance cameras. The perpetrators of the Domino's burglary left that system intact, resulting in being caught on video. The perpetrator of the Hobbs' Hideaway burglary pried open a metal back door to gain entry. Defendant asserts that the perpetrators of the Domino's burglary broke a glass window at the front of the store to gain entry. Because of these differences, a motion to admit evidence of the

Domino's burglary under the reverse *Williams* Rule would likely have been denied. Trial counsel cannot be deemed deficient for failing to file a meritless motion. *Gettel v. State*, 449 So.2d 413, 414 (Fla. 2d DCA 1984). Ground One is denied.

(Doc. 11-3, Ex. 16, pp. 2-3) (state court's record citations omitted).

The state court determined that a motion would have failed under Florida law governing reverse *Williams* rule procedures. This Court must defer to the state court's application of state law. *See Pinkney*, 876 F.3d at 1295. As the state court correctly noted, counsel is not ineffective for failing to raise a meritless motion. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). Julius does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Seven.

**Ground Eight**

Julius argues that trial counsel was ineffective for not alerting the trial court that a surveillance video could not be furnished. Respondent contends that the claim is procedurally defaulted because the factual allegations in Julius's § 2254 claim differ from those raised in ground two of his postconviction motion. Julius replies that he raised the claim in his postconviction motion. The Court therefore construes the claim in Ground Eight of the § 2254 application as raising the same claim presented in ground

two of the postconviction motion.[2] There, Julius argued that counsel should have sought a *Richardson* hearing regarding the State's alleged destruction of the Domino's surveillance video.

The state court denied Julius's claim:

Defendant claimed that trial counsel was ineffective for failing to move for a *Richardson* hearing to address a discovery violation. Defendant asserted that the State intentionally lost or destroyed the Domino's surveillance video to prevent its admission into evidence. Defendant alleged that he was prejudiced because the video would have established that someone else committed the Domino's burglary and therefore the Hobbs' Hideaway burglary. . . .

The Court . . . finds Defendant's claim conclusively refuted by the record. *See Barnes v. State*, 38 So.3d 218, 219 (Fla. 2d DCA 2010) (holding that a defendant must establish that he was prejudiced by the discovery violation). Regardless of how it happened, Defendant cannot establish that he was prejudiced by the loss of the Domino's surveillance video because even if the video had not been lost, it would have been inadmissible under the reverse *Williams* Rule. As explained in Ground One, above, there were important factual dissimilarities between the Hobbs' Hideaway burglary and the Domino's burglary. Because Defendant was not prejudiced, Ground Two is denied.

(Doc. 11-3, Ex. 16, pp. 3-4) (footnote omitted).

The state court did not unreasonably deny Julius's claim. Counsel informed the court that the video could not be produced. And this Court must accept the state court's conclusion that the evidence, even if available, would

---

[2] To the extent Ground Eight of the habeas application is based on facts not presented to the state court and is therefore procedurally defaulted, Julius does not establish the applicability of an exception to overcome the default. *See Smith*, 256 F.3d at 1138.

have been excluded under state law. *See Pinkney*, 876 F.3d at 1295. The state court reasonably concluded that Julius was not prejudiced by counsel's failure to seek a *Richardson* hearing. Because the state court did not unreasonably apply *Strickland* or base its ruling on an unreasonable determination of fact. As a result, Julius is not entitled to relief on Ground Eight.

**Ground Nine**

Julius asserts that trial counsel was ineffective for not adequately investigating reports and evidence disclosed in discovery. He states that he asked counsel to investigate reports about the Domino's surveillance video; a suspicious vehicle; Dan Robbins, who was the boyfriend of bartender Stephanie Short and was in the bar that night; and a statement Julius made to police. Julius also claims that he asked counsel to move for a continuance to investigate discovery that was provided 21 days before trial. He contends that in addition to the cigarette butts, this discovery revealed the presence of fingerprints and a boot print from the crime scene.

Julius states that he raised this claim in ground three of his postconviction motion. The state court denied this claim:

> In multiple grounds of his initial motion, Defendant claimed that trial counsel was ineffective for failing to obtain a continuance to investigate evidence from the Hobbs' Hideaway burglary provided by the State 21 days before trial. Defendant asserted that trial counsel should have tested the following for DNA or other identity evidence: cigarette butts, a fingerprint on a napkin, a boot print, a bank bag and a cloth pattern on the side of the safe. Defendant

asserted that this evidence might have matched the perpetrators of the Domino's burglary and that if this evidence didn't match Defendant, it would have cast substantial and reasonable doubt on his guilt, resulting in a not guilty verdict. The Court previously found this claim facially sufficient and reserved ruling.

The Court now finds Defendant's claim without merit. Defendant argues that this evidence *might* have matched the perpetrators of the Domino's burglary and that *if* it did not match Defendant, it would have raised reasonable doubt. Defendant's claim is based entirely upon speculation. Speculation cannot form the basis for postconviction relief. *See McLean v. State*, 147 So.3d 504, 512 (Fla. 2014) (allegations that a tape recording *might* be exculpatory or of impeachment value to the defendant's case was speculative and could not provide a basis for postconviction relief). Ground Three is denied.

(Doc. 11-3, Ex. 16, p. 5) (emphasis in state court's order).

The state court did not unreasonably deny Julius's claim as too speculative to warrant relief. Julius only theorizes that this evidence was exculpatory. As the state court noted, a claim of ineffective assistance based on speculation does not warrant habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that an applicant's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (quotation omitted).

Julius does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Nine.[3]

**Ground Ten**

Julius argues that trial counsel was ineffective for excluding evidence of Julius's statement to Deputy Scarpati. Julius contends that he told Deputy Scarpati that he had been in the vicinity of the bar but did not go inside the bar. Julius argues that his statement should have been admitted to explain that he was only in the vicinity of the bar and to impeach Deputy Scarpati's police report, which allegedly stated that Julius denied being in the area.

The state court denied Julius's claim:

The Court . . . finds Defendant's claim conclusively refuted by the record. First, Defendant's statement was not necessary to impeach Deputy Scarpati because there was nothing to impeach. The deputy did not testify during trial that Defendant ever denied being in the area of Hobbs' Hideaway. Nor was his police report admitted into evidence. Second, Defendant's statement, that he had been in the area of Hobbs' Hideaway but not inside the bar itself, fails to explain how a Mt. Dew can with Defendant's DNA made its way into the bar. Thus, Defendant's statement that he had never been inside the bar, if admitted, would likely have been viewed by the jury as a lie and would have weakened Defendant's case. *See Branch v. State*, 952 So.2d 470, 478 (Fla. 2006) (finding no error in the trial court's denial of the defendant's claim of ineffective assistance of trial counsel for failing to present evidence that would have actually been harmful to the defendant's case).

---

[3] As Ground Nine overlaps with other grounds in the § 2254 application, some allegations of ineffective assistance of counsel raised in this ground are addressed elsewhere in this order.

> For the aforementioned reasons, trial counsel was not deficient for
> failing to admit Defendant's statements and Ground Four is,
> therefore, denied.

(Doc. 11-3, Ex. 16, p. 4) (state court's record citation omitted).

The state court did not unreasonably deny this claim. First, as the state court noted, Deputy Scarpati did not testify that Julius denied being in the area of the bar, and his police report was not admitted. (Doc. 11-2, Ex. 3, pp. 304-15.) Thus, Julius's statement would not have been used for impeachment. Nor did the state court unreasonably conclude that Julius's statement that he had never been inside the bar was likely to hurt the defense given the DNA evidence indicating his presence inside the bar at the time of the burglary.

Julius has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Julius is not entitled to relief on Ground Ten.

**Ground Eleven**

Julius asserts that trial counsel was ineffective for not "sufficiently and fully" cross-examining bartender Stephanie Short. (Doc. 1, p. 20.) Julius argues that counsel should have utilized photographs showing a red cup and an ashtray that were also on the bar, which he contends undermined her claim that she cleaned off the counters. He also asserts that counsel should have "recant[ed]" Short's direct examination testimony that demonstrated her confusion about whether she observed one or two open cans of soda when she

27

came to the bar the morning after the burglary. (Doc. 1, p. 20.)  The state court

denied Julius's claim:

> Defendant asserted that the impeachment during trial was improper and that trial counsel failed to investigate and present additional impeachment evidence. . . .
>
> Five(A): Improper Impeachment
> Defendant asserted that Ms. Short's testimony regarding how many soda cans were out on the bar and how thoroughly she cleaned the bar the night of the burglary was contradicted by photographs of the bar. Defendant claimed that trial counsel failed to impeach Ms. Short with these photographs. . . . Defendant claimed he was prejudiced because a more effective impeachment would have damaged Ms. Short's credibility and the jury would have been prevented from hearing untruthful testimony that the Mt. Dew can with Defendant's DNA was not already inside the bar when Ms. Short left prior to the burglary. . . .
>
> The Court . . . finds Defendant's claim conclusively refuted by the record. A form of impeachment is cross-examining a witness by "[s]howing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about w[hich] the witness testified." § 90.608(4), Fla. Stat. (2014). The record reflects that trial counsel was not deficient because he conducted a competent cross-examination of Ms. Short. In doing so, trial counsel did exactly what Defendant claims trial counsel failed to do: used the photographs of the bar to impeach her.
>
> On cross-examination, trial counsel elicited from Ms. Short that pictures from the bar showed an additional can of Sprite that she did not testify to during direct examination. Furthermore, he elicited that she did not recall seeing that Sprite can when she entered the bar the morning after the burglary despite the picture establishing that it was obviously there. Despite her direct examination testimony that she had cleaned the bar and no garbage was permitted to be left on the bar, trial counsel elicited that she had left an empty red solo cup and a stray ashtray on top of the bar. . . . Because trial counsel's performance was not deficient, Ground Five(A) is denied.

(Doc. 11-3, Ex. 16, pp. 5-6) (state court's record citations omitted).

Julius fails to show the state court's ruling was unreasonable. As set out in the state court's analysis, counsel did cross-examine Short about how thoroughly she had cleaned the bar, and used the photographs during questioning. (Doc. 11-2, Ex. 3, pp. 271-84.) Counsel also questioned Short about the number of soda cans on the counter. (*Id.*, pp. 275-76.) Although Julius states that Short was confused about how many cans were open when she came to the bar after it had been burglarized, he fails to show that counsel was ineffective for not cross-examining her on this topic. Her testimony on direct examination clarified that she only saw one open can:

Q    Okay. Were those Mt. Dew cans there on February 24th when you left?

A    They were not, no. No.

Q    And did you notice the condition of the Mt. Dew cans?

A    That one was open.

Q    Only one was open?

A    Uh-huh.

Q    And what was the condition of the other one; did it appear open?

A    Yes.

Q    The other one. The second one. Did the second one appear[] open?

A      The second one, no. I'm sorry. One was only open.

(Doc. 11-2, Ex. 3, p. 266.)

Julius fails to establish that the state court unreasonably determined he did not show counsel performed deficiently in cross-examining Short. As Julius has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim, he is not entitled to relief on Ground Eleven.

**Ground Twelve**

Julius argues that trial counsel was ineffective for failing to locate, interview, and call a potential defense witness, Dan Robbins. Robbins was the boyfriend of bartender Stephanie Short and had assisted her in cleaning before she closed the bar. Short testified that Robbins handled sweeping and mopping, and that she cleaned the bar area and counters. (Doc. 11-2, Ex. 3, p. 263.) Julius claims that Robbins could have testified that Julius was "around" the bar during business hours and that the open soda can was on the counter before closing. (Doc. 1, p. 21.)

The state court held an evidentiary hearing. Robbins testified that he could not recall if he was at the bar the night of the burglary. (Doc. 11-3, Ex. 19, p. 9.) He remembered going to the bar after the burglary was discovered, but he had no recollection of whether he saw a Mountain Dew can. (*Id*., pp. 9-

10.) Trial counsel testified that he had no indication Robbins's testimony would have been inconsistent with Stephanie Short's testimony. (*Id.*, pp. 16-17.) Counsel also testified that part of the defense's position was that Robbins may have been the perpetrator. (*Id.*, pp. 23-24.) Counsel stated that it would have been difficult to blame Robbins had Robbins testified, because he anticipated Robbins would have denied committing the crime. (*Id.*) Counsel testified that not calling Robbins was a strategic decision he discussed with Julius. (*Id.*) Julius testified that he asked counsel to investigate Robbins and possibly call Robbins as a witness. (*Id.*, pp. 30-31.)

The state court denied the claim. The state court concluded that, "[s]imply put, Mr. Robbins had no recollection of the events the Defendant claims Mr. Robbins would have testified about." (Doc. 11-3, Ex. 20, p. 4.) Therefore, the state court found, "Mr. Robbins simply would not have testified in the manner in which [Julius] claims." (*Id.*) The state court also found it "clear that the decision by trial counsel not to call Mr. Robbins, was strategic in nature, and given the limited benefit, if any at all, involved with calling Mr. Robbins, such a decision was reasonable." (*Id.*)

The state court also noted that counsel testified part of the defense strategy was to blame Robbins for the crime, and that calling Robbins would have thwarted this strategy. (*Id.*, p. 5.) The state court found Julius's claim that he asked counsel to call Robbins not credible. (*Id.*) The state court

concluded that Julius "has wholly failed to demonstrate that counsel was ineffective for failing to call a witness with no memory of the underlying facts and a witness whom counsel testified the Defendant agreed not to call as a part of the defense's trial strategy." (*Id.*)

The state court's ruling was reasonable. The state court's finding that counsel made a strategic decision to not call Robbins is a factual finding that is presumed correct. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact"). Julius does not rebut by clear and convincing evidence the presumption of correctness afforded to this factual determination. *See* 28 U.S.C. § 2254(e)(1).

 "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Julius must show that counsel's strategic decision not to call Robbins was patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir.

2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (quotation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.").

Julius does not make this showing. As the state court explained, evidentiary hearing testimony revealed that Robbins had no specific recollection of the night of the burglary, and counsel believed that calling Robbins would have diminished the defense argument that Robbins committed the crime. The state court ruled that this was a reasonable strategic decision and that Julius therefore failed to meet his burden under *Strickland*. Because the state court's ruling did not involve an unreasonable application of *Strickland* and was not based on an unreasonable factual determination, Julius is not entitled to relief on Ground Twelve.

**Ground Thirteen**

Julius contends that trial counsel was ineffective for failing to investigate a report of a suspicious vehicle in the parking lot near the bar and

Domino's. He claims that two unidentified witnesses who reported the vehicle

would have testified that they did not see Julius in the area. Julius states that

he raised this claim in Ground Six(B) of his postconviction motion. The state

court denied this claim:

> In multiple grounds of his initial motion, Defendant claimed that
> trial counsel was ineffective for failing to call two unnamed
> witnesses that Defendant alleged were described in a police report.
> Defendant asserted that these two witnesses reported a suspicious
> vehicle lingering around the strip mall containing both Domino's
> and Hobbs' Hideaway. Defendant further asserted that these two
> witnesses would have testified that Defendant was not one of the
> people that they observed in the car and that Defendant did not
> match the description of the suspects in the Domino's surveillance
> video. Defendant claimed that he was prejudiced because their
> testimony would have created reasonable doubt in the minds of the
> jury. This claim was previously stricken by the Court as facially
> insufficient for failing to allege the identifies of the two witnesses,
> that they were available to testify at trial, and that he advised trial
> counsel of them.
>
> In his amended motion, Defendant notes that the police report
> mentions these two witnesses. If the police report provided the
> names of the witnesses, Defendant should have provided them in
> his amended motion. However he has failed to do so. If the police
> report did not provide the witnesses' names, it is unlikely that trial
> counsel could have successfully investigated them. Because
> Defendant's amended motion fails to correct the aforementioned
> pleading deficiencies, Ground Six(B) is denied with prejudice. *See*
> Fla. R. Crim. P. 3.850(f)(3).

(Doc. 11-3, Ex. 16, pp. 7-8.)

Julius does not show that the state court's ruling was unreasonable.

Julius merely speculates about these potential witnesses' testimony. He offers

no evidence establishing what they would have said. *See Tejada*, 941 F.2d at

1559; *see also McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (stating that the burden on demonstrating ineffective assistance "is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.' " (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006))). And Julius does not show that counsel had any way to investigate these unknown persons, whom Julius did not identify. Julius does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Thirteen.

**Ground Fourteen**

Julius argues that trial counsel was ineffective for failing to argue the theory of defense Julius requested. He contends that he asked counsel to "conduct an adequate investigation into the police reports and other evidence placed into evidence that would have presented jury members a[] plausible theory of defense[.]" (Doc. 1, p. 24.)

The state court denied Julius's claim:

In multiple grounds of his initial motion, Defendant claimed that trial counsel was ineffective for failing to establish a "logical theory of defense." The Court previously struck this claim as facially insufficient for failing to allege what viable defense was available to him that trial counsel failed to present and that there was a reasonable probability that he would have been exonerated if that defense had been presented to the jury.

35

> In his amended motion, Defendant merely restates ineffective assistance of trial counsel claims addressed elsewhere in this order and then couches them as a failure to pursue a viable defense. Because Defendant's amended motion fails to correct the aforementioned pleading deficiencies, and because the individual allegations contained in this ground are addressed elsewhere in this order, Ground Eight is denied with prejudice. *See* Fla. R. Crim. P. 3.850(f)(3).

(Doc. 11-3, Ex. 16, pp. 8-9.)

Julius does not show that the state court unreasonably rejected his claim. Julius faults counsel for not presenting a plausible defense. But he does not specify what that defense was or establish a reasonable probability of a different outcome had it been raised. Julius's vague and conclusory claims fails to meet either *Strickland* prong. Thus, Julius does not demonstrate that the state court unreasonably applied *Strickland* in reaching its decision. Nor does Julius show that the decision was based on an unreasonable factual determination. Julius is not entitled to relief on Ground Fourteen.

**Ground Fifteen**

Julius asserts that trial counsel was ineffective for making a "contradictory" closing argument. (Doc. 1, p. 25.) Respondent contends that this claim is procedurally defaulted because it relies on different facts than those presented in Julius's postconviction motion. Julius replies that he brings the same claim he raised in ground nine of his postconviction motion. (Doc. 23,

p. 34.) The Court therefore interprets this ground as raising the claim Julius

presented in ground nine of his postconviction motion.[4]

In the postconviction motion, Julius stated that counsel argued whoever

committed the burglary made efforts not to leave any physical evidence. Julius

contended that counsel was ineffective because he also made the contradictory

argument that there was evidence left behind that could have been tested.

The state court denied this claim:

> In his amended motion, Defendant claims that had trial counsel
> not given this contradictory statement, the jury would not have
> been confused and would have found Defendant not guilty. . . .
> Defendant takes trial counsel's statements during closing
> argument out of context. The full version of the first statement is
> as follows:
>
>> *The State has told you* numerous times that whoever
>> committed this burglary took painstaking efforts to
>> conceal themselves. Painstaking efforts not to leave
>> any shred of physical evidence. No surveillance. No
>> fingerprints. Does it make any sense that someone
>> who takes the time to do that would leave behind a can
>> that they drank from? Use your common sense, ladies
>> and gentlemen.
>
> Trial counsel was not asserting that he believed that the
> perpetrator had left no physical evidence. Trial counsel was
> criticizing the State's theory of the case that Defendant was the
> perpetrator and the perpetrator took care not to leave identifying
> physical evidence. Trial counsel was pointing out that the State's
> theory was inconsistent with Defendant's DNA being found on a

---

[4] To the extent Ground Fifteen of the § 2254 habeas application is based on facts not
presented to the state court and is therefore procedurally defaulted, Julius does not
establish the applicability of an exception to overcome the default. *See Smith*, 256
F.3d at 1138.

Mt. Dew can inside the bar. The second statement complained of by Defendant is as follows:

> We heard from Ms. Weigand of forensics that there was numerous pieces of evidence collected: Cigarette butts, napkins, even that there were fingerprints found on the napkin - - or white envelope, I apologize. Was there any connection there? Was there any testimony or evidence about whose fingerprints were on that envelope? No. She collected cigarette butts which could have been tested. They were not tested.

This statement was an attempt to show that the State's case against Defendant was weak because law enforcement failed to test available evidence. Because trial counsel did not argue in the first statement that the perpetrator took care not to leave behind physical evidence, trial counsel did not contradict the second statement that there was untested physical evidence. Because trial counsel's performance was not deficient, Ground Nine is denied.

(Doc. 11-3, Ex. 16, pp. 9-10) (state court's record citations omitted) (emphasis in state court's order).

This denial was not unreasonable. For the reasons explained in the state court's order, Julius fails to show that counsel made contradictory statements that confused the jury. He has not demonstrated that counsel performed deficiently. Julius has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Fifteen.

**Ground Sixteen**

Julius argues that trial counsel was ineffective for "failing to subject the State's case to meaningful adversarial testing." (Doc. 1, p. 26.) He claims that counsel's failures allowed the State's "weak circumstantial evidence" to go unchallenged. (*Id.*) The state court denied Julius's claim:

> The Court . . . finds Defendant's claim conclusively refuted by the record. A claim that trial counsel completely failed to subject the State's case to meaningful adversarial testing is a claim that trial counsel's performance during trial was so deficient that he completely failed to mount a defense. This is shown by examples such as a failure to cross-examine any State witnesses, present any kind of defense, or being completely unprepared for trial. Alternatively, this can be shown by conceding Defendant's guilt to a crime during opening statements without Defendant's consent. *See Atwater*, 788 So.2d at 231-32; *Chavez v. State*, 12 So.3d 199, 211-12 (Fla. 2009).
>
> Defendant's claim merely restates ineffective assistance claims addressed elsewhere in this order and then couches them as a failure to subject the State's case to meaningful adversarial testing. Furthermore, the record reflects that trial counsel did submit the State's case to meaningful adversarial testing. Ms. Short, Denise Weigand, and Deputy Scarpati were material state witnesses as their testimony placed Defendant inside the bar on the night of the burglary. Trial counsel conducted effective cross-examination of all three witnesses. He pointed out weaknesses in the State's case in closing argument. And he did not concede Defendant's guilt during opening statements or closing arguments. Thus, trial counsel's performance was not deficient. Ground Eleven is denied.

(Doc. 11-3, Ex. 16, pp. 11-12) (state court's record citations omitted).

Julius does not show entitlement to relief. As set forth in the state court's order, counsel cross-examined State witnesses and presented argument on

Julius's behalf. Contrary to Julius's assertion, counsel did not fail to challenge the State's evidence. Julius does not demonstrate that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. Ground Sixteen warrants no relief.

**Ground Seventeen**

Julius contends that trial counsel was ineffective for not objecting during closing arguments when the prosecutor stated a "hypothetical theory" about why Julius might have taken a drink from the soda can. (Doc. 1, p. 28.) The prosecutor asserted that Julius's "one mistake" was drinking the can of Mountain Dew. (Doc. 11-2, Ex. 3, pp. 364.) The prosecutor then stated:

> And, members of the jury, how do we know that this defendant burglarized Hobbs Hideaway? Because of the Mt. Dew can. He was good. He did a pretty good job for a while, but then he just couldn't help himself. Couldn't resist it. Maybe he got thirsty. Maybe he needed the caffeine. I don't know. But he took a sip out of that Mt. Dew can.

(*Id.*, p. 371.) Julius contends that counsel should have objected because the prosecutor's theory that he became thirsty during the burglary was not proven by the evidence and shifted the burden of proof to him. The state court denied Julius's claim:

> Defendant asserted that the prosecutor's statements that Defendant drank from the Mt. Dew can because he was thirsty after exerting himself while burglarizing Hobbs' Hideaway were improper. Defendant asserted that these comments were inflammatory rhetoric, put forth hypothetical theories and opinions that were not supported by the evidence, and shifted the

burden of proof to Defendant by painting a false picture of Defendant committing the burglary. Defendant argued that these improper comments led to his conviction and therefore there is a reasonable probability that the outcome of the trial would have been different had trial counsel objected. . . .

The Court . . . finds Defendant's claim conclusively refuted by the record. A prosecutor may make any closing argument that is reasonably drawn from the evidence adduced at trial. *Gonzalez v. State*, 990 So.2d 1017, 1028-29 (Fla. 2008). During trial, Ms. Short testified that when she left after closing Hobbs' Hideaway on the night of the burglary, the bar had been cleaned and no soda cans were left out. Glen Hobbs testified that when he arrived at Hobbs' Hideaway the next morning, the bar had been broken into, that damage had been done to the property, and money had been taken. Pasco Sheriff Corporal Scott Maurano testified that the metal back door had been pried open, the ATM smashed open, and that the safe had been pried open. Mr. Hobbs testified that the perpetrator had attempted to pry the safe off the ground. Mr. Hobbs and Ms. Short both testified that an open Mt. Dew can was found underneath the beer taps the morning after the burglary. Ms. Weigand and Deputy Scarpati testified that the mouth of the Mr. Dew can was tested for DNA which identified Defendant.

Thus, there was sufficient evidence to allow the prosecutor to argue during closing that Defendant committed the burglary, exerted himself while so doing, and drank from the Mt. Dew can. Because the prosecutor's comments were supported by or reasonably drawn from the evidence and were not inflammatory rhetoric, they were not improper. Had trial counsel objected, the objection would have been overruled. Thus, trial counsel was not deficient and Ground Thirteen is denied. *Schoenwetter*, 46 So.3d at 546.

(Doc. 11-3, Ex. 16, pp. 12-13) (state court's record citations omitted).

The state court's ruling was reasonable. Closing argument is meant to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). A prosecutor may

comment on the argument and argue inferences he believes the jury should draw from the evidence. *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). But the prosecution may not make comments that shift the burden of proof to the defense. *See United States v. Sosa*, 208 F. App'x 752, 756 (11th Cir. 2006) ("[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence.") (citation omitted).

For the reasons discussed by the state court, the prosecutor did not improperly suggest that a possible explanation for the open can was that Julius drank some soda when he became thirsty. And this Court must defer to the state court's finding that an objection would have been overruled as a matter of state evidentiary law. *See Pinkney*, 876 F.3d at 1295. Further, Julius does not show that this comment, involving an inference from the evidence, shifted the burden of proof to the defense. Julius does not show that the state court unreasonably applied *Strickland* or that its decision was based on an unreasonable factual determination. He is not entitled to relief on Ground Seventeen.

**Ground Eighteen**

Julius argues that trial counsel was ineffective for failing to object to the trial court's lack of impartiality in ruling on his motion for judgment of acquittal. The state court dismissed his claim:

> The Court . . . finds that this claim is procedurally barred. Defendant seeks to improperly argue trial court error by couching it as the ineffective assistance of trial counsel. Defendant asserts that trial counsel should have objected to the reasoning the trial court used in denying his motion for judgment of acquittal. However, where a trial court denies a motion for judgment of acquittal, it can and should be challenged on direct appeal. *See Morris v. State*, 71 So.2d 725, 727 (Fla. 1998) (holding that once a motion for judgment of acquittal has been made and the trial court has been given an opportunity to rule on the motion, it is considered preserved for appellate review). An objection from trial counsel was neither necessary nor required. Because trial counsel moved for judgment of acquittal and the trial court denied the motion, the error Defendant alleges that the trial court made in denying the motion was preserved for appellate review. A claim of trial court error that can be addressed on direct appeal is not cognizable in a Rule 3.850 motion. *Henry v. State*, 933 So.2d 28, 29 (Fla. 2d DCA 2006).

(Doc. 11-3, Ex. 16, p. 14.)

Respondent asserts that Julius's claim is procedurally barred because the state court rejected it on procedural grounds. The state court determined that Julius's claim amounted to one alleging trial court error, which must be brought on direct appeal. Julius exhausted the federal nature of the construed trial court error claim by contending that the trial court's alleged lack of impartiality in ruling on the motion for judgment of acquittal violated his federal rights to due process and a fair trial. (Doc. 11-3, Ex. 15, pp. 44-45.)

The state court disposed of the federal trial court error claim by applying an independent and adequate state procedural rule that trial court error claims must be raised on direct appeal. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th

43

Cir. 2001). The state court's procedural ruling results in a procedural default of the claim on federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). Accordingly, Julius's trial court error claim cannot be considered unless he meets either the cause and prejudice or fundamental miscarriage of justice exception. *See id*. Julius does not establish either exception. Accordingly, the underlying trial court error claim is barred from review.

But to the extent the state court mischaracterized Julius's ineffective assistance claim and failed to rule on it, Julius is entitled to de novo review.[5] Julius complains that the trial court based the ruling on the court's "personal opinion about the processing of Mountain dew cans at the factory." (Doc. 1, p. 29.) During the motion for judgment of acquittal, counsel argued that the State's evidence only established that "at some point between when that can was sent to the bottling company after manufacturing and when it arrived on that bar that the defendant touched it. . . . They haven't proved when he touched it." (Doc. 11-2, Ex. 3, pp. 339-40.)

The trial court summarized the State's evidence, including the evidence that the DNA came from the top rim and inside of the can. (*Id*., pp. 341-42.)

---

[5] Ordinarily, when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013). But it is clear that the state court recognized Julius's ineffective assistance of counsel claim, construed it to raise a different claim, and did not rule on the ineffective assistance of counsel claim.

The court stated, that "[i]f the DNA had come from handling the can, processing the can, putting it into the box because he worked at the canning factory, okay. But if you work at the canning factory, you don't touch the top of the can, you don't touch the bottom of the can. And, by the way, they use gloves. So even if he was in the canning factory to touch the Mt. Dew can, he would have been using gloves because that's what they make them do in the factory." (*Id.*, pp. 342-43.)

Julius argues that counsel should have objected to the trial court's "personal opinion about the processing of Mountain Dew cans at the factory" as a "breach of impartiality, as well as the courts considering facts not in evidence." (Doc. 1, p. 29.)  He contends that an objection would have preserved the matter for appeal.

Julius fails to show entitlement to relief. First, he fails to show that the comment was improper. The trial court was explaining her rejection of Julius's argument by noting that because the DNA was in a location where it would have been left by drinking the open can, it made no sense that Julius's DNA would have been deposited before the can was opened.

Additionally, an applicant cannot establish prejudice in an ineffective assistance of trial counsel claim by arguing that the matter would have been preserved for appeal because the prejudice prong concerns the outcome of trial. *See Strickland*, 466 U.S. at 696 ("[I]n adjudicating a claim of actual

ineffectiveness of counsel, . . . the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). Alternatively, in addressing the trial court error claim, the state court applied state law to conclude that an objection was not needed to preserve this question for appeal. That decision of state law is owed deference. *See Pinkney*, 876 F.3d at 1295. Accordingly, Julius fails to show either deficient performance by trial counsel or resulting prejudice. He is not entitled to relief on Ground Eighteen.

**Ground Nineteen**

Julius argues that trial counsel was ineffective for not objecting to the trial court's lack of impartiality during *voir dire*. He contends that the trial court indicated the State's evidence would prove his guilt beyond a reasonable doubt and suggested that the jury need not pay attention to details of the evidence. The state court denied Julius's claim:

> In Ground Nine of his initial motion, Defendant claimed that trial counsel was ineffective for failing to object to, and move for a mistrial after, the trial court made comments to the *venire* during *voir dire* that constituted a breach of impartiality. Defendant contended that the trial court made an improper analogy addressing the State's "beyond a reasonable doubt" burden of proof. Defendant asserted that the trial court's statement that a sundae "doesn't need a cherry to be a sundae and I can make that decision" was really a comment showing that the trial court had pre-judged what evidence was admissible and that the evidence that would be admitted was sufficient to prove the charge beyond a reasonable doubt, thus removing the jury's ability to determine whether the State's burden of proof was satisfied in this case.

In Ground Ten of his initial motion, Defendant claimed that trial counsel was ineffective for failing to object to the following statement by the trial court during *voir dire*: "If someone stole a car and you had to decide if they stole the car or not, would it matter if the car was black, blue or purple?" Defendant claimed that this was an improper comment on the State's "beyond a reasonable doubt" burden of proof because it implied that detail evidence is not important. Defendant asserts that this preconditioned the prospective jurors' minds. Defendant contended that the trial court should not attempt to define reasonable doubt for the jury.

Defendant asserted that had trial counsel objected to these comments and moved for mistrial, the issue would have been properly preserved for appellate review, thus preventing these claims from being reviewed under the higher "fundamental error" standard on direct appeal as evidence by the Second District's *per curiam* affirmance of Defendant's case. . . .

The Court finds both claims conclusively refuted by the record. First, the trial court's sundae analogy did not show bias and made no reference to the evidence that would be presented, the prejudgment of the admissibility of that evidence, or whether the State had met or would meet its burden of proof. Second, Defendant takes the trial court's comments out of context. The full statements are as follows:

> THE COURT: And so the question is: Can you talk about what you do know and make a decision. Now, your decision may be lack of evidence. The State did not prove it because I don't have enough. And if that's what happens, then that should be your verdict, not guilty.
>
> But what you have in the box - - in the back, if you say, that's enough, it could be great if we had, you know, the cherry on the sundae, but the sundae is a sundae and I agree it's a sundae. It doesn't need a cherry to be a sundae and I can make that decision.

47

So what we're really concerned about are people and their personality that might spend the entire time over here going, what was that judge talking about; what do you think she meant over there; what do you think she's keeping from us.

I'm not keeping anything from you. I want a fair trial. And a fair trial means we all have to follow the rules. And if it's [sic] falls outside the rules, I'm not going to allow it in. If it's necessary and relevant and admissible, it's coming in.

So can you concentrate on what does come into evidence and listen to that and make a decision on what the evidence is? Can you follow those instructions?

PROSPECTIVE JUROR: Out of respect for you - - and I appreciate your position, but I don't want to make that decision.

THE COURT: Okay. And that's fair. I mean, there are people that have told me, Judge, look. I'm that personality that I'm going to concentrate on every single thing that was objected to and not all the other stuff that came in because that's just how I am. And I'm okay with that.

But, as I made - - I had a jury earlier today and I made an example, I have friends that can tell a story, if possible, in two minutes, but they make it take 20. Because they tell me the color of the sky and the color of the road and the wind velocity and all kinds of things that don't have anything to do with the actual story, but they like to tell the [sic] a whole bunch of other stuff that doesn't have anything to do with the facts. And, so, if it's - - and I'll give you an example: If someone stole a car and you have to decide if they stole the car or not, would it matter if the car was black, blue, or purple? No. Did they steal a car? Is it a car and did they steal it? Yes? No? The color of the car is really

> not relevant. I'm not saying that would be an objection,
> but that's an example of what I'm talking about.

These statements occurred during an exchange between the trial court and a prospective juror while discussing whether the prospective juror would be able to concentrate on relevant evidence that was admitted and not wonder about what irrelevant or inadmissible evidence was excluded pursuant to an objection. Thus, contrary to Defendant's assertion, they were not addressing the State's reasonable doubt burden of proof.

In fact, the trial court expressly distinguished between the State's burden of proof and the consideration of irrelevant evidence when it prefaced the hypotheticals with the following: "Now, your decision may be lack of evidence. The State did not prove it because I don't have enough. And if that's what happens, then that should be your verdict, not guilty." This preface also expressly reinforced to the prospective jurors that they could, in fact, find Defendant not guilty should the State fail [to] present enough evidence to prove beyond a reasonable doubt that Defendant committed the offense. Had trial counsel objected on the ground that these statements were impermissible or biased comments addressing the State's burden of proof, the objection would have been overruled. Trial counsel cannot be deemed deficient for failing to raise a meritless objection. *Schoenwetter*, 46 So.3d at 546. Grounds Fourteen B) and (C) are denied.

(Doc. 11-3, Ex. 16, pp. 14-17) (state court's record citations omitted).

Julius does not show entitlement to relief. As explained in the court's comprehensive order, the trial court's comments did not reflect a lack of impartiality or a predetermination about issues in the case. Nor did the comments incorrectly advise the jury about the evidence. Because there was no valid basis for counsel to object, the state court did not unreasonably conclude that Julius failed to establish deficient performance. *See Freeman*,

536 F.3d at 1233. The state court did not unreasonably apply *Strickland* in denying Julius's claim. Nor was its decision based on an unreasonable factual determination. Julius is not entitled to relief on Ground Nineteen.

**Ground Twenty**

Julius contends that trial counsel's "representation during trial preparation and trial was cumulatively ineffective." (Doc. 1, p. 31.) The state court denied this claim. When it did so, all but one claim of ineffective assistance of trial counsel (the claim that was the subject of the evidentiary hearing) had been denied or dismissed. Therefore, the trial court determined that the cumulative error claim must fail. (Doc. 11-3, Ex. 16, p. 17.) Julius does not show that this decision was contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable factual determination. He is not entitled to relief on Ground Twenty.

Accordingly, it is **ORDERED** that Julius's application (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Julius and to **CLOSE** this case.

It is further **ORDERED** that Julius is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To

obtain a certificate of appealability, Julius must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Julius has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Julius must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of March, 2023.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**